31374. THOMPSON, Commissioner, *v.* KING PLOW COMPANY.

DECIDED FEBRUARY 12, 1947.

766

*Eugene Cook, Attorney-General, Victor Davidson, C. E. Gregory Jr., Assistant Attorneys-General,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, E. D. Smith Jr.,* contra.

GARDNER, J. ■ ■ There is no dispute as to the facts. There is no dispute as to the statutes involved. There is a sharp conflict between the parties as to the application of the facts to the principles of law applicable thereto, as well as a construction of the law as applied to the facts.

■ There are issues learnedly and exhaustively discussed by the

parties which we do not deem necessary to determine, under the record of this case. (1) There is considerable argument as to whether or not the deficiency assessment by the Commissioner was clothed with the presumption of correctness in the trial of the appeal case in the superior court. Under the Code, § 92-8446 such an appeal, as here, is a de novo proceeding. We note from the record that the Commissioner assumed the burden of proof. We presume from this that he took advantage of the opening and concluding argument. Be this as it may, the court was not called upon to decide this question. Neither are we, even if we had authority to do so, under such a situation. We might also call attention to the fact that the appeal was made to the superior court after the proposed deficiency assessment of the Commissioner and before an execution was issued. Moreover, if the proposed deficiency assessment of the Commissioner made a prima facie case as to the deficiency assessment, it was a rebuttable presumption and could be removed by evidence. (2) Another question which receives considerable argument and citations of authority is whether the dividends received from the Coca-Cola Company and the Twin Coach Company and interest on obligations of the Town of Rutledge were "non-taxable income or taxable income." Since the motion for a new trial was on the general grounds only, it would appear that the trial judge proceeded with the trial on the theory that the dividends and interest in question were non-taxable income. We will conclude it also on this theory and principle.

■ This leaves us to determine two main issues: (1) Whether the Commissioner lawfully disallowed the taxpayer to deduct $454.54 for intangible tax paid to the State of Georgia for the fiscal year ending May 31, 1942, which the taxpayer incurred by reason of its ownership of the stock in the Coca-Cola Company and the Twin Coach Company; and (2) whether the taxpayer incurred any expenses in connection with earning and distributing the dividend income of $28,650 from the stock in the two corporations and $300 interest on the obligations of the Town of Rutledge. We will discuss these two questions in the order named.

(1) Code (Ann. Supp.), § 92-3109 (a) reads: "All the *ordinary and necessary expenses* paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually ren-

dered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition of the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he had no equity. Expense incurred in earning nontaxable income is not an allowable deduction from taxable income before computing the tax." (Italics ours.)

Subsection (c) reads: "Taxes paid or accrued within the taxable year, except State and Federal income taxes, estate and inheritance taxes, gift taxes, cigar and cigarette taxes, gasoline taxes, and taxes assessed for local benefits of a kind tending to increase the value of the property assessed: Provided, however, that the taxpayer may only deduct from gross income the amount of Federal net income taxes shown to be due and actually paid during the immediate preceding taxable year on the return filed by said taxpayer in such preceding taxable year, and, provided further, that where the entire net income of the taxpayer is not taxable by the State of Georgia, then the taxpayer may only deduct such Federal net income taxes in the same proportion that the net income taxable by the State of Georgia bears to the entire net income taxable by the Federal Government."

During the tax year the taxpayer paid $454.54 on its certificate of stock, which stock produced the non-taxable dividend which it received on its stock in the Coca-Cola Company and the Twin Coach Company, set out above. In making the income-tax returns for the year in question, the taxpayer deducted the amount of this intangible tax which it had paid to the State from its gross income. The Commissioner disallowed this deduction. The Commissioner contends that the amount of this intangible tax was expense incurred or an outlay in earning the non-taxable income under subsection (a) of Code, § 92-3109, supra, and particularly under the last sentence in said subsection, which reads: "Expense incurred in earning non-taxable income is not an allowable deduction from taxable income before computing the tax." The Commissioner contends that the word "expenses" under this subsection of the Code, while not expressly mentioning intangible tax on certificates of stock which produce non-taxable income, that there are no words of limitation,—the word "expenses" is sufficiently broad to include

any outlay of expense including intangible tax on the stock certificates, to be classed as an expense or outlay which produced the non-taxable income. It will be noted that the Code, § 92-3109, subsection (a), defines the expenses of any trade or business as "ordinary and necessary expenses . . including . . salaries, compensation for personal services . . traveling expenses . . rentals. . ." The expenses deductible under this subsection of the Code must be expenses similar to those specifically enumerated and expenses which would fall under the words "all the ordinary and necessary expenses" when we give to such words their common and ordinary meaning. We think that such expenses as this section enumerates are embraced within the meaning of the word "expenses" wherever used in this section and that it was not the legislative intent when using the word "expenses" as applied to "expenses" incurred in earning non-taxable income, to include intangible tax paid or accrued during the tax year on the stock certificates which produced the non-taxable income. We are further confirmed in the correctness of this interpretation when we read subsection (c) of the Code, § 92-3109. It will be noted that subsection (c) deals exclusively with taxes which the taxpayer may deduct and which he may not deduct before computing the tax on the taxable income. That section says taxes paid or accrued within the tax year except certain taxes enumerated therein which may not be deducted as will appear from the provisions of this subsection hereinabove quoted. Intangible taxes are not included within the exceptions. Not being included in the exceptions which are not deductible, it necessarily follows that they are deductible before computing the tax. It therefore follows that the Commissioner erred in disallowing this item of intangible tax paid during the tax year and finding a deficiency against the taxpayer in this amount.

(2) We come next to consider the question set forth in this subhead of our opinion. The portion of Code § 92-3109 (a) applicable to this question is contained in the last sentence thereof, as follows: "Expenses incurred in connection with earning and distributing nontaxable income is not an allowable deduction from taxable incomes before computing the tax." The taxpayer was engaged in the manufacturing of items set forth in paragraph 3 of the stipulation. It appears from the tax return in question that

the taxpayer did a gross business of $734,220.83, with a gross income of $230,674.41. He claimed an operating expense of $38,-561.30. The nontaxable dividends from the stock in the Coca-Cola Company and the Twin Coach Company and interest on obligations of the Town of Rutledge amounted to $28,950.

*The Commissioner disallowed $4,299.58 of operating expenses of the taxpayer as being attributable to the earning and distributing of the nontaxable income.* The Commissioner arrived at this disallowance in the manner as follows:

| "Gross income | $230,674.41 | 88.85 per cent. |
|---|---|---|
| Dividends and interest | 28,950.00 | 11.15 per cent. |
| Total income | $259,624.41 | 100.00 per cent. |
| Expenses to be allocated | 38,561.30 | |

Amount allocated to earning dividends and interest and thus disallowed:
11.15 per cent of $38,561.30    $4,299.58"

The taxpayer contends that under the evidence the expenses (if any) incurred in connection with its nontaxable income which it received as a dividend on the stock it owned in the Coca-Cola Company and the Twin Coach Company and the interest on the obligations of the Town of Rutledge were so small as to be trivial and thus not substantially within the provisions of the act sufficiently to reverse the findings of the trial judge under the law.

The Commissioner contends, on the other hand, that the evidence shows a substantial apportionment should be chargeable to the earnings and distributing of such nontaxable income, and that moreover regardless of how small, it was the duty of the court to ascertain the amount of expense, if any. And further, that the evidence shows that there was established under the evidence, a substantial expense in connection with earning and distributing the nontaxable income. We agree with the Commissioner and the taxpayer that it was the duty of the trial judge acting without a jury to determine whether there was any expense incurred in connection with the earning and distributing the nontaxable income. After a careful consideration of the record we have reached the conclusion that the trial judge was authorized in finding as a fact and a conclusion of law that there were no expenses incurred in connection with the earning and distributing of the nontaxable income, in the instant case. The gross business of the taxpayer was over $700,000.

The evidence shows that the certificates of stock in the corporations and the obligations which it owned against the Town of Rutledge all of which produced the nontaxable income, were acquired by the taxpayer several years prior to the fiscal tax year in question. None of the officers of the taxpayer devoted any time, so far as the evidence shows, to operating the corporations which produced the nontaxable income. This income was evidenced by three checks which came into the office to be handled in the regular course of its nearly three-quarters of a million dollars of business. The witness introduced by the taxpayer and whose business it was to direct the employees handling these items, stated that there was no additional expense incurred in earning and distributing this income. Under the particular facts of this case we think the trial judge was authorized in concluding that if any additional expense was incurred, it was necessarily trivial. The attorney for the Commissioner inquired of the witness if the amount had been $200,000 would any additional expense have been incurred. The witness answered "no." Under the testimony of this witness he went somewhat into detail as to the conduct of the business of the taxpayer. We will not refer to those details here, since we have set the evidence of this witness out in full. We might observe here, however, that if a nontaxable dividend check of $200,000 had been received in one check and paid out in one check, with the same office force, that this would not have been any substantial expense incurred in connection with the earning and distributing of a nontaxable income. Of course we can as easily concede that in some cases there no doubt does and will arise instances where expenses would be incurred in connection with earning and distributing nontaxable income. This, however, necessarily depends upon the facts of each particular case. It wisely rests upon a fact-finding body and not this court.

The attorneys for the Commissioner call attention to the decision of the Supreme Court in *Carreker* v. *Walton,* 47 *Ga.* 394, 398. It is argued that the excoriations of the court in that case as to the want of knowledge as to the value of his land are applicable to the witness here. The court concluded, "They are duty bound to find out in some way its value, pay tax on that value, and we give very little heed to the pretended want of knowledge." Counsel reasons from there that the taxpayer here was bound, under the law, in the

772

instant case, to know the expense incurred in connection with the earning and distribution of the nontaxable income. We do not think the facts in that case and the case at bar are at all similar. If there was no such expense incurred, as the witness testified, and as the evidence here demonstrates, from the whole testimony of the witness in connection with the other evidence in the case, then of course the law did not require the taxpayer to know something which did not exist. Neither do we think the law would require the taxpayer at great expense to set up and provide for a trivial expense in connection with earning and distributing nontaxable income.

In conclusion of this division of our opinion it is held: (1) That the trial judge did not err as a matter of law in allowing as a deduction from the gross income of the taxpayer the sum of $454.54 as intangibles tax on stock in the Coca-Cola Company and the Twin Coach Company, and (2) the court did not err in finding as a fact and a conclusion of law that the $4299.58 nor any other sum was chargeable to the taxpayer as an expense attributable to the earning and distributing of nontaxable income. The judgment of the lower court is affirmed in allowing the taxpayer a deduction from its gross income of $454.54; and affirmed in allowing as a deduction from his gross income the sum of $4299.58.

This case being originally assigned to the First Division and there being a dissent, the case was referred to the entire court. After consideration by the whole court, the court concurred in the affirmance of the case, with no dissent.

*Judgment affirmed. All the Judges concur.*